UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
JOSEPH UVINO and WENDY UVINO,

                          Plaintiffs,

          - against -

HARLEYSVILLE WORCESTER INSURANCE
COMPANY and HARLEYSVILLE INSURANCE
COMPANY, each n/k/a NATIONWIDE
MUTUAL INSURANCE COMPANY,

     Defendants/Third-Party Plaintiffs,

          - against -

J. BARROWS, INC.

          Third-Party Defendant.
-----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 03/04/2015
```

**MEMORANDUM AND ORDER**

13 Civ. 4004 (NRB)

        Presently before the court are cross-motions for summary

judgment regarding the obligation of Harleysville Worcester

Insurance Company, Harleysville Insurance Company, and Nationwide

Mutual Insurance Company (collectively "defendants" or

"Harleysville") to indemnify Joseph and Wendy Uvino ("plaintiffs"

or the "Uvinos") for a judgment awarded to the Uvinos in favor of

the Uvinos against J. Barrows, Inc. ("JBI"), a contractor insured

by Harleysville.  For the reasons set forth below, Harleysville's

motion for summary judgment is denied and the Uvinos' motion for

partial summary judgment, seeking a ruling purely as to "coverage parameters,"[1] is granted.

## BACKGROUND[2]

JBI, a building and construction advising company, was insured under a general commercial liability insurance policy issued by Harleysville, effective from May 1, 2005 to May 1, 2008. Pl. 56.1 ¶ 1; Def. 56.1 ¶ 1. Under the policy, Harleysville agreed to, inter alia, "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" where the "bodily injury" or "property damage" was "caused by an 'occurrence' that takes place within the coverage territory . . . ." Pl. 56.1 ¶ 2; Def. 56.1 ¶ 2; Dahill Decl., Ex. 3. The

---

[1] Specifically, the Uvinos seek a ruling as to whether any of the claims submitted to the jury in the underlying action may fall under Harleysville's insurance policy; they do not yet seek summary judgment as to whether the judgment awarded by the jury includes covered claims. We thus grant summary judgment only on this limited issue.

[2] The facts recited here are drawn from the following sources: (1) the complaint filed June 11, 2013 ("Cmplt."); (2) the third-party complaint filed July 23, 203 ("TPC"); (3) Plaintiffs' Rule 56.1 Statement ("Pl. 56.1"); (4) the Declaration of William F. Dahill in Support of Plaintiffs' Motion for Summary Judgment ("Dahill Decl."), and the exhibits attached thereto; (5) Defendant's Rule 56.1 Statement ("Def. 56.1"); (6) the Declaration of Margriet A. Schaberg in Support of Defendant's Motion for Summary Judgment ("Schaberg Decl."), and the exhibits attached thereto; (7) the Declaration of Willian F. Dahill in Opposition to Defendant's Motion for Summary Judgment ("Dahill Opp'n Decl."), and the exhibits attached thereto; (8) the Reply Declaration of Margriet A. Schaberg ("Schaberg Opp'n Decl."), and the exhibits attached thereto; (9) the Declaration of Willian F. Dahill in Further Support of Plaintiffs' Motion for Summary Judgment ("Dahill Supp. Decl."), and the documents attached thereto; and (10) the Supplemental Declaration of Magriet A. Schaberg ("Schaberg Supp. Decl."), and the documents attached thereto.

policy also contained numerous exclusions from coverage, including
exclusions for: 1) "Damage to Property" (exclusion j(6)), under
which "'[p]roperty damage' to . . . [t]hat particular part of any
property that must be restored, repaired or replaced because 'your
work' was incorrectly performed on it" is not covered; 2) "Damage
to Your Work" (exclusion l), under which "'[p]roperty damage' to
'your work' arising out of it or any part of it" is not covered,
although "[t]his exclusion does not apply if the damaged work or
the work out of which the damage arises was performed on your behalf
by a subcontractor"; and 3) "Damage to Impaired Property or Property
Not Physically Injured" (exclusion m), under which "[p]roperty
damage to 'impaired property'[3] or property that has not been
physically injured, arising out of (1) a defect, deficiency,
inadequacy or dangerous condition in 'your product' or 'your work,'
or (2) a delay or failure by you or anyone acting on your behalf
to perform a contract or agreement in accordance with its terms"
is not covered.   Dahill Decl., Ex. 3.

      The Uvinos are New York residents who hired JBI to help with
the construction of their home on Long Island.   Cmplt. ¶ 6.   On

---

[3] "Impaired property" is defined as "tangible property, other than 'your product'
or 'your work,' that cannot be used or is less useful because: a. It incorporates
'your product' or 'your work' that is known or thought to be defective,
deficient, inadequate or dangerous; or b. You have failed to fulfill the terms
of a contract or agreement; if such property can be restored to use by: a. The
repair, replacement, adjustment or removal of 'your product' or 'your work'; or
b. Your fulfilling the terms of the contract or agreement."   Id.

November 1, 2005, JBI and the Uvinos entered into a Construction Management Agreement (the "CMA") pursuant to which JBI would act as "Construction Manager" for development of the Uvinos' home. Pl. 56.1 ¶ 5; Def. 56.1 ¶ 5. JBI's duties as Construction Manager, enumerated in the CMA, included reviewing drawings and specifications, developing a budget and schedule in consultation with the Uvinos, and securing all necessary licenses and insurance certificates from trade contractors. CMA ¶¶ 2.1-2.12. The Uvinos explicitly remained as the project's "general contractor," agreed to hold JBI harmless as a general contractor, and entered into agreements with subcontractors themselves. Id. ¶¶ 1.1, 7.2.

In October 2007, the Uvinos fired JBI, claiming that he did material damage to their home by attempting to alter or "fix" the work of other contractors. For example, the Uvinos claim that when a custom glass stair tower provided by another contractor was found to be an improper height, JBI acted ultra vires to modify the house's roof (itself the work of a separate contractor) to accommodate and install the tower; as a result of these modifications and the improper installation of the stair tower, the tower allegedly "constantly swayed" and the roof leaked, causing damage to the home. Pl. 56.1 ¶¶ 21-28. The Uvinos also allege that JBI interfered with the work of outside contractors in charge of wall framing, interior reveals, and exterior siding, requiring

4

remediation of these projects, and that JBI failed to timely coordinate inspection of a septic tank, forcing the Uvinos to destroy another contractor's work on a "pool house slab" in order to allow the Suffolk County Health Department to access the septic system.   Pl. 56.1 ¶¶ 29-50; Pl. Br. at 8-11.

As a result of his termination, in December 2007, JBI sued the Uvinos in New York Supreme Court to recover outstanding monies allegedly owed to him under the CMA.   Def. 56.1 ¶ 8.   The Uvinos counterclaimed for breach of contract, breach of fiduciary duty, fraud, and for a declaratory judgment with respect to a mechanic's lien, and they also commenced a separate action for damages against JBI and the project's architect.   Pl. 56.1 ¶ 11; Def. 56.1 ¶ 9. These actions were later consolidated and removed to the Eastern District of New York in connection with the Uvinos' filing for bankruptcy in August 2009.   Pl. 56.1 ¶ 11; Def. 56.1 ¶ 11.

Harleysville agreed to defend JBI, its insured, under a reservation of rights and provided JBI with counsel throughout pretrial proceedings.   Pl. 56.1 ¶ 12; Def. 56.1 ¶ 12-13.   In September 2011, shortly before trial was to begin, Harleysville sought leave to move to intervene for the purpose of requesting that the court "submit special interrogatories to the jury to allocate between those damages related to the repair and replacement of Barrows' faulty work versus damages to other

5

property." Dahill Supp. Decl., Ex. A.  After the court declared a

mistrial for unrelated reasons, it allowed Harleysville to move to

intervene, which Harleysville did on November 2, 2011.  Dahill

Supp. Decl., Ex. D.  In its motion papers, Harleysville argued that

the burdensome prospect of undertaking subsequent litigation to

allocate covered damages favored allowing Harleysville to intervene

to submit interrogatories at trial.  Id.  JBI opposed the motion,

asserting that the motion was untimely and that while JBI would be

harmed  by  jury  confusion  caused  by  the  interrogatories,

Harleysville faced no prejudice if intervention was denied as it

could resolve the coverage issues in a later proceeding.  Dahill

Supp. Decl., Exs. G, H.  The Uvinos did not oppose the motion but

reserved the right to comment on any language submitted to the

jury.

While briefing of the intervention motion was ongoing, JBI

moved to disqualify the counsel provided by Harleysville, arguing

that Harleysville's motion to intervene revealed a conflict of

interest  because  JBI's  counsel  could  defeat  liability  for

Harleysville without defeating liability for JBI.  Dahill Supp.

Decl., Ex. B.  On January 17, 2012, the court granted JBI's motion

to disqualify, compelling Harleysville to pay for independent

defense counsel for JBI, and it denied Harleysville's motion to

intervene.  No party made any further attempt to submit special

6

interrogatories to the jury and Harleysville did not attempt to appeal the denial of its intervention motion. Dahill Supp. Decl., Ex. M.

The case then proceeded to trial. On March 16, 2012, a jury found JBI liable for damage to the Uvinos' home and awarded the Uvinos $317,840 in general damages, $83,788 in consequential damages, and $51,231.04 in damages for breach of JBI's fiduciary duty. The court made no determination as to whether these losses were covered under JBI's insurance policy. Shortly thereafter, on April 13, 2012, Harleysville formally disclaimed coverage for the Uvinos' claims under JBI's insurance policy.

On June 11, 2013, the Uvinos initiated the present action seeking a determination that Harleysville must indemnify JBI for the underlying and as-yet unsatisfied judgment.[4]   Harleysville answered on July 3, 2013, and served JBI with a third-party complaint on July 18, 2013, which JBI answered on August 13, 2013. On June 6, 2013, the Uvinos filed a motion for partial summary judgment "seek[ing] a ruling [merely] as to coverage parameters," following which they would "submit in a separate hearing evidence of the damages that fall within the declared coverage and the

---

[4] The Uvinos currently seek satisfaction only for the general and consequential damage awards; these awards, originally totaling $401,628, were subsequently modified to include interest and costs, resulting in the current claim for $657,800.81. Cmplt. ¶¶ 13-24.

amounts thereof." Pl's Br. at 2 n.2. On July 9, 2014, Harleysville

opposed the motion and filed a cross-motion for summary judgment,

"seek[ing] an Order declaring that it has no duty to indemnify the

Uvinos . . . ." These motions were fully briefed on August 13,

2014.

On December 16, 2014, the Court held oral argument, at which

the parties disputed whether, even assuming coverage, any covered

damages sought by the Uvinos could be discerned from the general

verdict returned by the jury. The Court requested supplemental

briefing on this question, which was concluded on February 17,

2015, and held oral argument on this issue on February 26, 2015.


## DISCUSSION

### I. Legal Standards

Summary judgment is appropriate when "the movant shows that

there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The "mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue

of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007)

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48

(1986)). When determining whether a genuine issue of material fact

exists, a court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010).  In the summary judgment context, a fact is material "when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  When cross-motions for summary judgment are made, as here, the standard is the same as that for individual motions for summary judgment.  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

"An insurance contract is interpreted under ordinary common-law contract principles, and we 'give effect to the intent of the parties as expressed in the clear language of the contract.'"  MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 158 (2d Cir. 2011) (quoting Morgan Stanley Grp., Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000)).  If the terms of an insurance policy are clear and unambiguous, they must be accorded their ordinary meaning.  Cont'l Ins. Co. v. Atl. Cas. Ins. Co., 603 F.3d 169, 180 (2d Cir. 2010). The insured bears the burden of showing that an insurance coverage covers the loss, and the insurer bears the burden of showing that an exclusion applies to exempt it from covering a claim.  Morgan

9

Stanley Grp., 225 F.3d at 276 & n.1.  Doubts are resolved in favor of the insured.  Id. at 276.

## II. Analysis

The question presented of whether Harleysville has an obligation to indemnify JBI for damages awarded to the Uvinos at trial raises several subsidiary questions to be answered in sequence.

First, the parties dispute whether any of the claims submitted by the Uvinos to the jury in the underlying action against JBI can give rise to coverage under Harleysville's policy.  In this regard, it is undisputed that several claims adjudicated at trial, such as the Uvinos' claim for breach of JBI's fiduciary duty, do not warrant coverage.  However, the Uvinos maintain that certain claims submitted to the jury do give rise to coverage under the policy: specifically, the Uvinos seek coverage for claims they characterize as concerning harm done by JBI to the work of other contractors, such as JBI's improper installation of the stair tower or its interference with construction by others of the interior reveals and exterior siding.  Harleysville counters that such claims are precluded from coverage because they in fact seek to remedy harm to JBI's own work product rather than the work of other contractors,

10

and therefore that no claims in the underlying action warrant coverage.

Second, the parties dispute whether, even assuming that some claims in the underlying action are covered under the policy, Harleysville is nevertheless entitled to summary judgment. Harleysville argues that the general verdict returned by the jury is wholly unsusceptible to reasoned allocation, leaving the Uvinos unable to meet their burden of identifying covered damages within the jury award. The Uvinos, on the other hand, assert that the general verdict can be intelligently apportioned between covered and noncovered damages and they seek an opportunity to establish such apportionment at a subsequent allocation proceeding.

Below, we address each question--whether there can be coverage for any of the claims in the underlying action and whether Harleysville is entitled to summary judgment because any such claims cannot be discerned from the jury's verdict--in turn. To preview, we find first that work-product limitations do not preclude the Uvinos from seeking coverage for some of their claims submitted at trial. Second, although we remain skeptical about the Uvinos' ability to identify covered damages within the jury award, we allow the Uvinos one final, limited opportunity to prove what portion of the general verdict, if any, is attributable to covered claims.

11

## A. JBI's Work Product[5]

Generally, damages to remedy a contractor's defective work will not be covered under a general commercial liability policy like the one at issue here; rather, coverage exists only where the contractor's defective work causes harm to others or others' work. See George A. Fuller Co. v. U.S. Fidelity & Guar. Co., 613 N.Y.S.2d 152, 155 (App. Div. 1st Dep't 1994) ("[The] policy . . . does not insure against faulty workmanship in the work product itself but rather faulty workmanship in the work product which creates a legal liability by causing bodily injury or property damage to something other than the work product."). The several work-product exclusions contained in Harleysville's policy, as well as the work-

---

[5] Although it does not alter the substantive arguments or outcome in the case, we note that the parties have not used the proper analytical framework in their briefing of this first question before the court. The parties have treated this dispute largely as one regarding whether JBI's actions--in causing harm either to his own work product or to the work of other contractors--constitute an "occurrence" giving rise to coverage under Harleysville's policy, in light of the longstanding rule that a contractor's own faulty work is not generally deemed an "occurrence" under such a policy. See George A. Fuller Co. v. U.S. Fidelity & Guar. Co., 613 N.Y.S.2d 152, 155 (App. Div. 1st Dep't 1994). A recent Second Circuit case, however, suggests that the parties' dispute turns instead on whether a work-product exclusion applies to bar coverage. In Scottsdale Ins. Co. v. R.I. Pools Inc., 710 F.3d 488 (2d Cir. 2013), the Second Circuit examined policy provisions identical to those at issue here and held that the language of exclusion l shows that "these policies . . . unmistakably include defects in the insured's own work within the category of an 'occurrence.'" Id. at 492. Thus, courts considering whether alleged harm to the insured's work product is covered under such a policy must look instead to the policy's exclusions. See id. at 491-92; see also Harleysville Worcester Ins. Co. v. Paramount Concrete, Inc., 10 F.Supp.3d 252 (D. Conn. 2014) (noting that after Scottsdale, courts can no longer "conflate[] the initial determination of coverage, i.e., whether there was an 'occurrence,' and the separate question whether an exclusion applie[s]," id. at 262, and proceeding to address similar questions regarding the contractor's faulty work in the context of the policy's exclusions). Accordingly, we proceed to examine the scope of coverage for harm done by JBI to his own or others' work through the policy's work-product exclusions.

product limitation incorporated into the policy's definition of "occurrence," all reflect this fundamental principle. Exclusion l makes this explicit, barring recovery for damage to the insured's own work done by the insured. See Dahill Decl., Ex. 3 at 84. Exclusion j(6) similarly bars recovery for damage done by the insured on other property insofar as that damage is directly caused by the insured's defective work. See id. at 83 (limiting the exclusion to "that particular part of any property" where the insured's work was "incorrectly performed on it" and thus differentiating between direct damage to property as a result of defective work and consequential damage to property as a result of defective work on other property") (emphasis added). And in the same vein, exclusion m bars recovery for damage done to property that is harmed by incorporation of the insured's work and that can be restored through remediation of the insured's work--again attempting to eliminate purely contractual recovery by excluding situations where the damage results directly from the insured's work and where remedying that work alone will resolve the damage. See id. at 84.

In essence, then, each of these exclusions (like the definition of "occurrence") asks the court to give effect to the rule that a general commercial liability policy covers "physical damage caused by the negligence of an insured" and not "those

13

situations where coverage is sought 'for contractual liability of the insured for economic loss because the product or completed work is not what the damaged person bargained for.'" <u>Nova Cas. Co. v. Cent. Mut. Ins. Co.</u>, 872 N.Y.S.2d 603, 606 (App. Div. 3rd Dept. 2009). The central question before the court thus becomes whether the Uvinos seek to recover merely for the benefit of their bargain with JBI or whether they seek to recover for harm done by JBI to other property or others' work.[6]

On this issue, Harleysville argues that JBI acted as a general contractor during the construction of the Uvinos' home, such that the entire project is deemed to be his work product and, as a result, all damages must be excluded from coverage. <u>See, e.g.</u>, <u>Illinois Nat. Ins. Co. v. Tutor Perini Corp.</u>, 11 Civ. 431 (KBF),

---

[6] In response to this question, the parties dispute whether the nature of the claims for which the Uvinos received judgment is determinative. Specifically, Harleysville argues that the fact that the jury returned a verdict only on breach of contract and breach of fiduciary duty proves that the Uvinos' claims were for purely contractual recovery, thereby running afoul of this coverage principle. However, as the Uvinos note, it is the nature of the facts and damages sought, not their denomination in a complaint, that determines insurance liability. <u>See, e.g.</u>, <u>Royal Ins. Co. of Am. v. v. Ru-Val Elec. Corp.</u>, No. CV-92-4911, 1996 WL 107512, at *2 (E.D.N.Y. Mar. 8, 1996) ("Liability policies do not provide coverage where the complaint sounds in contract and not in negligence. The important distinction is not whether the complaint states a contract or tort theory, but whether the damage to be remedied is the faulty work or product itself or injury to person or other property.") (internal citations omitted); <u>J. Lucarelli & Sons, Inc. v. Mountain Valley Indem. Co.</u>, 881 N.Y.S.2d 708, 710-11 (App. Div. 3rd Dept. 2009) ("The nature of claims asserted in a complaint is to be determined 'based upon the facts alleged and not the conclusions which the pleader draws therefrom' or upon the characterization applied to a party."); <u>Aquatectonics, Inc. v. Hartford Cas. Ins. Co.</u>, No. 10-CV-2935 DRH ARL, 2012 WL 1020313, at *7 (E.D.N.Y. Mar. 26, 2012) (finding claims sounded in contract notwithstanding allegations of negligence).

2012 WL 5860478, at *6 (S.D.N.Y. Nov. 15, 2012) aff'd sub nom.
Metro. Transit Auth. v. Illinois Nat. Ins. Co., 564 F. App'x 618
(2d Cir. 2014) (finding no coverage "where a general contractor's
negligent acts only affect the property owner's economic interest
in the building"); Amin Realty, L.L.C. v. Travelers Prop. Cas. Co.,
05 Civ. 195 (RLM), 2006 WL 1720401, at *5-6 (E.D.N.Y. June 20,
2006) ("[H]ere the insured was the general contractor constructing
an entirely new building, and, as such, was responsible for all
work performed . . . . Consequently, any damage to the building
constituted injury to the insured's work product--as opposed to
'consequential property damage inflicted upon a third party as a
result of the insured's activity' with respect to an independent
component part."); Pavarini Const. Co. v. Cont'l Ins. Co., 759
N.Y.S.2d 56, 57 (App. Div. 1st Dept. 2003) (noting that "[a]s
general contractor, Pavarini was responsible for the entire
project").

Specifically, Harleysville argues that JBI fulfilled a role
functionally equivalent to that of general contractor because the
scope of his work as Construction Manager, in reviewing and devising
plans for all aspects of construction, included the entire building
project. Harleysville also relies on statements made by Wendy
Uvino at trial to assert that the parties entered into the CMA
(rather than a general contractor agreement) merely as a

15

technicality to avoid paying workers' compensation, see Schaberg
Decl., Ex. J, and thus that JBI was hired to act as the project's
de facto general contractor.

However, as the Uvinos rightly counter, the language and
limits of the CMA make clear that JBI did not take on the role of
general contractor when he agreed to act as "Construction Manager."
For one, the CMA specifically states that the Uvinos, not JBI, will
act as the project's general contractor, and it was the Uvinos,
rather than JBI, who engaged the project's subcontractors and
tradesmen.  In addition, the CMA provides that the Uvinos will hold
JBI "harmless from any responsibility as a general contractor,"
suggesting that the Uvinos did not intend to enlist JBI as a general
contractor given that it seems unlikely the parties would have
given JBI the benefits of the general contractor position without
any of its liabilities.  Moreover, where a general contractor
typically has free reign to direct subcontractors and undertake his
own work on the project, the duties JBI contracted to fulfill are
purely advisory in nature and do not entail his interaction with
anyone other than the Uvinos.  Indeed, JBI specifically entered
into a separate "trade contractor" agreement with the Uvinos before
doing work on wood framing for the house, further supporting the
claim that JBI was not authorized to undertake its own work and did

16

not have the full authority traditionally afforded a general contractor.  See Dahill Opp'n Decl., Ex. 1.

Having thus found that JBI did not act as general contractor, we find that his "work" must be limited to the performance of his duties under the CMA.  Limiting JBI's "work" to that which was contracted for aligns precisely with the principle underlying the work-product exclusions, expressed repeatedly in cases on the subject: that damages should be excluded from coverage only where the claim springs from a party's failure to abide by a contract, such that "the product or completed work is not what the damaged person bargained for."  Nova Cas. Co. v. Cent. Mut. Ins. Co., 872 N.Y.S.2d 603, 606 (App. Div. 3rd Dept. 2009) (emphasis added).  See also Harleysville Worcester Ins. Co. v. Paramount Concrete, Inc., 10 F. Supp. 3d 252, 268 (D. Conn. 2014) (the work-product exclusion "applies to any property [an insured] contracted to perform work on") (emphasis added); Amin Realty, L.L.C. v. Travelers Prop. Cas. Co., 05 Civ. 195 (RLM), 2006 WL 1720401, at *5-6 (E.D.N.Y. June 20, 2006) (denying coverage because the claim involved the contractor's "failure to meet its contractual obligations") (emphasis added); Mid-Hudson Castle, Ltd. v. P.J. Exteriors, Inc., 738 N.Y.S.2d 96, 98 (App. Div. 2nd Dept. 2002) (finding no coverage where all insured's claims "arise out of its performance under the contract.") (emphasis added).

17

Therefore, if JBI acted outside the scope of his contract--
for instance, in undertaking construction work himself or in
directing other contractors without authorization, as the Uvinos
asserted at trial--and, in so doing, caused damage to the work of
other contractors, such damages would not constitute harm to JBI's
own "work" and would not be barred from coverage simply by the
policy's work-product exclusions. Cf., e.g., Acuity v. Soc'y Ins.,
810 N.W.2d 217 (Wis. Ct. App. 2012) (looking to contactor's bid
memo to determine the scope of work contracted for and, finding
that the contract entailed work only on a wall, concluding that the
work-product exclusions did not bar coverage for damage to the rest
of the building as a result of the wall's excavation); Standard
Const. Co. v. Maryland Cas. Co., 359 F.3d 846, 852 (6th Cir. 2004)
(finding work-product exclusions did not apply where an insured,
erroneously believing it had a contract right to do so, dumped
debris from road construction on private property, in part because
"it is not the manner in which the dumping was performed (the
"work") that is faulty or caused damage, but rather that the dumping
itself . . . was unauthorized" for which recovery was sought);
Bituminous Cas. Corp. v. Kenway Contracting, Inc., 240 S.W.3d 633,
642 (Ky. 2007) (finding work-product exclusions did not apply to
contractor who worked on the wrong property, because the exclusions
were ambiguous as to whether they included only property the insured

contracted to work on or any property on which the insured performed
work and ambiguity must be resolved in favor of the insured).   As
a result, we find that the claims submitted by the Uvinos to the
jury at trial may include claims covered under Harleysville's
policy.

### B. Allocation of the General Verdict

Harleysville next argues that, even if some of the Uvinos'
claims are covered under their policy, Harleysville is entitled to
summary judgment because the Uvinos cannot prove what portion of
the $401,628 general verdict awarded by the jury is attributable
to covered claims and what portion is attributable to noncovered
claims.

Just as the insured has the initial burden of establishing its
entitlement to coverage, the insured generally has the burden of
identifying covered damages.   See Bogardus v. U.S. Fid. & Guar.
Co., 58 N.Y.S.2d 217, 222-23 (App. Div. 1945); Morris v. W. States
Mut. Auto. Ins. Co., 268 F.2d 790, 793 (7th Cir. 1959) ("Where the
judgment includes elements for which the insurer is liable and
elements outside the range of coverage, apportionment of damages
to the respective causes of action is a burden on the party seeking
to recover from the insurer.").   However, in certain circumstances,
that burden may be shifted to the insurer, and/or the party seeking

19

recovery may be permitted to withstand summary judgment and proceed to further litigation on allocation of covered versus noncovered claims.  For instance, if the insurer did not adequately make known to the insured the availability and desirability of receiving a special verdict, or if it is not clear that the insured was apprised its interest in receiving a special verdict, the parties seeking coverage need not be required to prove what portion of a general verdict is covered at the summary judgment stage.  See Duke v. Hoch, 468 F.2d 973, 976-83 (5th Cir. 1972); TranSched Sys. Ltd. v. Fed. Ins. Co., No. CA 12-939-M-PAS, 2014 WL 7251184, at *8-9 (D.R.I. Dec. 22, 2014); Arnett v. Mid-Continent Cas. Co., No. 8:08-CV-2373-T-27EAJ, 2010 WL 2821981, at *6 (M.D. Fla. July 16, 2010); Buckley v. Orem, 730 P.2d 1037, 1044-45 (Idaho Ct. App. 1986).

Here, we find that Harleysville, which moved to intervene for the purpose of requesting special interrogatories to forestall a coverage-allocation dispute and therefore made known both the availability of the interrogatories and the parties' divergence of interests, did not fail in its fundamental responsibilities to its insured such that the burden of proving allocation should shift to Harleysville.  Nevertheless, under the particular facts here, including the possibility that the parties or the court relied on Harleysville's statements regarding the expectation that an allocation trial would ensue in the absence of special verdict, we

20

conclude that Harleysville is not entitled to summary judgment although the Uvinos have failed to identify covered damages within the jury award at this stage.  The Uvinos may thus proceed to an allocation proceeding, at which they can attempt to show what portion of the general verdict returned by the jury, if any, is attributable to covered claims.  At such a proceeding, the Uvinos retain the heavy burden of adducing proof competent to "establish in the mind[] of the [factfinder] a reasonable certainty that damages . . . awarded by the jury flow naturally from the cause of action established under the policy of coverage." Bogardus v. U.S. Fid. & Guar. Co., 58 N.Y.S.2d 217, 223 (App. Div. 4th Dept. 1945) (internal quotation marks and citations omitted).  As we remain skeptical that they will ultimately be able to meet this burden, the Uvinos will be required to demonstrate in writing in advance of such a proceeding how they intend to identify covered damages, if any, incorporated in the general verdict with prima facie showings of examples of covered damages.

## CONCLUSION

For the foregoing reasons, the Uvinos' motion for partial summary judgment on the possibility of coverage is granted and

Harleysville's motion for summary judgment is denied. This Memorandum and Order resolves Docket Nos. 39 and 48.


                    **SO ORDERED.**

Dated:     New York, New York
            March 4, 2015

                                      NAOMI REICE BUCHWALD
                             UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on
this date to the following:

William F. Dahill, Esq.
Melissa A. Finkelstein, Esq.
Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, NY 10110

Lance J. Kalik, Esq.
Margriet A. Schaberg, Esq.
Riker, Danzig, Scherer, Hyland & Perretti, LLP
Headquarters Plaza, One Speedwell Avenue, P.O. Box 1981
Morristown, NJ 07962

Jeremy D. Platek, Esq.
Dreifuss Bonacci & Parker, PC
777 Westchester Avenue, Suite 101
White Plains, NY 10604